```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MILLS POND GROUP LLC, "XYZ, INC.", WENDY
SORRO, MARY GIORDANO, SALVATORE
GIORDANO, GEORGE POWERS, PATRICIA F.
PELLETIER, GRACE PATANE, "JOHN DOE" and
"JANE DOE" NOS. 9 THROUGH 97,

                    Plaintiffs,
         v.

TOWN OF SMITHTOWN, NEW YORK, EDWARD R.
WEHRHEIM, AS TOWN SUPERVISOR AND A
MEMBER OF THE TOWN BOARD OF THE TOWN
OF SMITHTOWN, THOMAS J. MCCARTHY,
LYNNE C. NOWICK, LISA M. INZERILLO and
THOMAS W. LOHMANN AS MEMBERS OF THE
TOWN BOARD OF THE TOWN OF SMITHTOWN,
PETER A. HANS AS PLANNING DIRECTOR OF THE
TOWN OF SMITHTOWN, MATTHEW V.
JAKUBOWSKI AS TOWN ATTORNEY OF THE
TOWN OF SMITHTOWN, and DAVID A. BARNES
AS DIRECTOR OF THE DEPARTMENT OF
ENVIRONMENT & WATERWAYS OF THE TOWN
OF SMITHTOWN,

                    Defendants.
------------------------------------------------------------------X
```

FILED
CLERK
11:49 am, Oct 16, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM
OF DECISION &
ORDER

24-CV-1859 (GRB)

**GARY R. BROWN, United States District Judge**:

*"Never let the facts stand in the way of a good story."*

-axiom paradoxically misattributed to Mark Twain

Much of the complaint here is fictitious, indeed, overtly so. One supposed plaintiff, "XYZ, Inc." (quotation marks original) is not an entity, but a concept. "Plaintiff, 'XYZ, Inc.,'" counsel asserts "*is a licensed home health care services agency*/assisted living provider *to be created* and *intended to represent* the operator of Whisper Mills Assisted Living at the Saint James facility *to be located* on Mills Pond Road . . . ." Complaint, Docket Entry ("DE") 1 ¶ 3

1

(emphasis added). The absence of syntactic unity highlights a patent falsehood: as a placeholder for an entity "to be created" and "intended to represent" an as-yet-nonexistent "operator" of a facility "to be located" in the defendant township, it cannot be true that XYZ "*is* a licensed home health care services agency." *Id.* ¶ 4. It isn't anything. And it certainly can't hold a license.

And that's not all. The complaint provides for another 86 invented plaintiffs that are nothing more than wishful thinking: "'John Doe' and 'Jane Doe' Nos. 9 through 97," the complaint asserts, "*are unidentified persons*, *the names being fictitious* but are *intended to represent other future residents* of Whisper Mills Assisted Living at St. James facility *proposed to be located* on Mills Pond Road in the Town of Smithtown, New York."[1] *Id.* ¶ 5 (emphasis added). Again, counsel proffers litigants that exist only in the imagination of the complaint's drafters: a group of unnamed, fictitious persons who, though oddly specific in number, might, one day, if they truly exist, reside in a facility that has yet to be built.[2]

All of this flagrantly violates "the principal that '[f]ederal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'" *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Therefore, none of the conjectural plaintiffs may press claims before this Court.

The real, living plaintiffs named in the complaint fare only slightly better than their fictional counterparts. The six identified individuals do have the advantage of being actual

---

[1] Mills Pond intended to construct a 97-bed nursing facility. DE 1 ¶ 21. As there are 93 individual plaintiffs identified (six named individual plaintiffs and 86 Does), one could conclude either that (1) XYZ, once formed, would regularly keep four beds empty or (2) this constitutes an error further exemplifying why the law requires that litigation be brought on behalf of real individuals with non-theoretical problems.

[2] Plaintiffs carry this fiction beyond the point of absurdity. In a sworn statement made to this Court, Frank Amicizia, the sole member and manager of the Mills Pond Group LLC, avers that "residents prospectively residing in one of Mill's Pond's private rooms or apartments . . . often live in the facility for the balance of their lives." DE 18-1 ¶¶ 1, 5. So, the Court is being asked to imagine that Does Nos. 9 through 97 will not only live in the facility, but will also die there.

2

people, but their reason for being here mirrors that of Does No. 9 through 97. Those individuals "are *intended future residents* of the Whisper Mills Assisted Living at St. James facility *proposed to be located* on Mills Pond Road." DE 1 ¶ 4. So the thought is this: these individuals subjectively intend to reside, at some unknown time in the future, at a facility that does not yet exist. Of course, much can happen between now and then, including the possibility that the facility may never be completed, obtain licensure or, if completed and licensed, won't be to their liking based on the cost, the paint color, or one of a thousand other reasons.

Finally, the imaginary XYZ corporation has a putative real world counterpart: plaintiff Mills Pond Group LLC, which the complaint advises "is a New York State limited liability company which develops assisted living residences." *Id.* ¶ 18. Even here, though, there's a problem, as the complaint further asserts that, in conducting this activity, "Mills Pond reviews land use regulations, conducts studies and investigations, contracts for the acquisition, either by purchase or by lease, of real property *and applies for and obtains land use approvals for assisted living facilities to be operated by 'XYZ, Inc.'" Id.* (emphasis added). Wait now, that can't be right: we know that XYZ has been fabricated for the purpose of this litigation. It can't be that Mills Pond historically "develops assisted living residences" as a regular course of business on behalf of an entity that doesn't yet exist. Furthermore, a sworn document submitted by plaintiffs on this motion makes clear that Mills Pond has no special affinity for creating assisted living facilities; rather, Mills Pond had an initial plan to build "condominium-type residences" on the parcel, but shifted to its current iteration to avoid zoning hurdles. DE 18-1 ¶ 15.

After eliminating the silliness, what remains of this case is this: plaintiff Mills Pond is a closely-held development company that's attempting to construct an assisted living facility on property zoned for residential use. In sum, the complaint makes clear that, sometime in 2023,

3

Mills Pond's application for a zoning exception took a bad turn, and Mills Pond would like this Court to enforce state law on its behalf, acting as an appellate agency in the zoning process. In fact, Mills Pond believes that its likelihood of success in this litigation is so very certain, and the resulting harm sufficiently irremediable, that it is entitled to the extraordinary remedy of a preliminary injunction against the Town and the public officials it has haled before this Court. Defendants seek dismissal.

This opinion follows.

*Background*

Despite the expansion of page limits upon the parties' request, *see* DE 14, neither side opted to provide the Court with statements of fact in their memoranda, instead opting to incorporate the complaint by reference. As such, relevant factual portions of the complaint—devoid of the ceaseless legal arguments and conclusions interwoven therein[3]—are briefly summarized here.

Mills Pond purchased a nine-acre parcel of land located, unsurprisingly, on Mills Pond Road in Saint James, New York in August 2019, in an area zoned only for residential development. *Id.* ¶¶ 30, 34. After various meetings, Mills Pond submitted a Special Exception Application to the Town of Smithtown in November 2022. *Id.* ¶ 36. A March 2023 "community outreach meeting" resulted in "extensive pushback" from area residents. *Id.* ¶ 45. In April 2023, the Town Board adopted a Local Law amending the Town Zoning Code eliminating assisted living facilities from eligibility for special exception permits in residential zones because of a memorandum from the Town's Environmental Protection Director, characterized as follows:

The April 20, 2023 Memorandum stated that a State Environmental Quality

---
[3] *See, e.g.*, DE 1 ¶ 22 ("the proposed structure was and still remains buildable on the Parcel as a matter of right, without the necessity of a Special Exception or any hearing"); ¶¶ 38-40 (repeatedly and gratuitously characterizing requests made by the Town as "*ultra vires*").

Review Act (SEQRA) Negative Declaration, Determination of Non-significance be recommended regarding the Local Law because the proposed modification to eliminate the assisted living facility use within residential districts was "intended to mitigate or avoid potential conflicts with neighboring residential land uses, including but not limited to potential adverse impacts upon neighborhood character, sensitive receptors, or other environmental parameters in such residential zoning district.

*Id.* ¶¶ 50, 51. In January 2024, Mills Pond requested continued processing of its application notwithstanding the new enactment. *Id.* ¶ 53. In March 2024, having not received a response to its January 2024 request, a formal rejection of the Application or a hearing date, plaintiffs filed the instant action. *Id.* ¶ 54.

Based on these facts, the complaint purports to set forth causes of action under the Fair Housing Act, the Americans with Disabilities Act, the Equal Protection Clause, the Due Process Clause, various provisions of the New York State Constitution and "bad faith re-zoning" under state common law.

***Discussion***

*Standard of Review*

The Court has applied the well-trodden standard, recently discussed in *Potter v. Inc. Vill. of Ocean Beach*, No. CV 23-6456 (GRB)(ARL), 2024 WL 3344041 at *4 (E.D.N.Y. July 9, 2024), in deciding defendants' motion to dismiss.[4] In sum, assuming the allegations of the complaint to be true and drawing inferences in favor of the plaintiffs, the factual matters asserted must be facially plausible and support the propounded claims. Here, where portions of the complaint are internally inconsistent and admittedly fictitious, the plausibility standard applies with particular force.

---

[4] Remarkably, plaintiffs argue that defendants' notice of motion is defective, as the notice does not specifically state that defendants seek dismissal under Fed.R.Civ.P. 12(b)(1). To the extent this hyper-technical argument holds water, the Court exercises its discretion to overlook this deficiency, as plaintiffs cannot articulate any resulting prejudice.

5

*Standing*

In this case, questions of standing loom large. Among other issues, the notional XYZ company cannot sustain an action, as the capacity to sue "does not extend to entities that lack legal existence." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021) (holding that dissolved corporation, lacking legal existence, cannot maintain action). It is also certain that the individual plaintiffs—both identified and imaginary—lack "sufficient standing to present a justiciable case within the meaning of Article III, § 2 of the Constitution." *Abele v. Markle*, 452 F.2d 1121, 1124 (2d Cir. 1971). As the Circuit explained:

> The existence of a case or controversy depends upon whether the persons seeking relief have alleged a sufficient personal stake in the outcome to assure that the court will be called upon to resolve real issues between genuine adversaries rather than merely to give advisory opinions with respect to abstract or theoretical questions. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Flast v. Cohen*, 392 U.S. 83, 95-99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). It is settled that advisory opinions may not be given by federal courts, *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961), and that the constitutionality of laws may be challenged only by those litigants who will suffer some actual or substantial injury from their enforcement, as distinguished from a remote, general, or hypothetical possibility of harm. *United Public Workers v. Mitchell*, 330 U.S. 75, 89-90, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

*Id.* This is particularly problematic here, where the John and Jane Does do not exist and may never exist, and both the Does and the named plaintiffs predicate their claims on the notion that they might occupy a facility that has not been and may never be created. The Court "need not explore the many other conditions that might preclude their gaining any stake or interest [as] any threat of harm to them is remote and hypothetical." *Id.* at 1124–25.

Endeavoring to establish standing for the actual and hypothetical plaintiffs, counsel relies on *Sunrise Development, Inc. v. Town of Huntington, New York*, 62 F. Supp. 2d 762 (E.D.N.Y. 1999). There, a nationwide developer of critical care facilities (CCFs) brought an action against a town that enacted a local law, while plaintiff's application to build a CCF was pending.

Adopting a magistrate judge's report and recommendation, Judge Arthur D. Spatt granted a preliminary injunction in favor of plaintiffs. *Id.*

Counsel claims that *Sunrise Development* constitutes "precedent" that "the Individual Plaintiffs and the Unnamed Individual Plaintiffs have standing." DE 18-38 at 17. This is incorrect in two respects. First, though a determination of another district judge from this district may prove instructive or persuasive, the determination is not binding precedent on this Court.[5] *Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). More importantly, contrary to counsel's representation, *Sunrise Development* does not hold that the John Doe plaintiffs in that case have standing, as a review of the opinion reveals that the issue of standing was not raised by the parties.[6]

The only plaintiff, then, that may have standing is Mills Pond. As to the discrimination claims asserted under the Fair Housing Act and the ADA, Mills Pond generally lacks such standing to press these matters unless, as relevant here, it can demonstrate that "its primary functions are affected by, and could provide the bases for, alleged discriminatory conduct." *31FO, LLC v. Inc. Vill. of Lloyd Harbor*, No. CV 22-3303 (GRB)(ARL), 2023 WL 6385187, at *7 (E.D.N.Y. Sept. 29, 2023). Here, Mills Pond fails to plausibly allege that its "principal purpose is to develop assisted living residences," DE 18-38 at 14, given the equivocal allegations of the complaint and the sworn evidence submitted by Mills Pond that its initial plan for the

---

[5] This principle proves particularly important in this instance, as the *Sunrise Development* opinion bears an unusual feature: by its own terms, the decision is a preliminary determination, and the court "ordered that the decision not be considered 'final and binding'" pending the satisfaction of other conditions. 62 F. Supp. 2d at 765. A review of the court records fails to reveal whether these conditions were satisfied.

[6] The report and recommendation in *Sunrise Development* notes that "[t]he parties do not seriously dispute that the John Doe plaintiffs are handicapped or disabled and that Sunrise may assert their rights under both the FHA and the ADA. Nor is there any dispute that both statutes apply to the facts presented by the instant action." 62 F. Supp. At 773–74. Given that the John Doe plaintiffs were imaginary, this language proves odd, but further establishes that the court did not rule on the question of standing.

7

property was to build condominiums. DE 18-1 ¶ 15. Mills Pond, a closely-held legal entity apparently created for the purpose of purchasing the subject property, could have met its organizational objectives by shifting its plan to building a nursery school or a supermarket if such endeavors were easier to accomplish. That it pivoted to a nursing facility to obtain favorable zoning treatment does not imbue it with constitutional standing. *Compare Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 629 (S.D.N.Y. 2021), *aff'd,* No. 21-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022) (finding standing on behalf of company whose "primary purpose is to fight against anti-Israeli discrimination" and was alleging bias based on national origin). Thus, the construction of nursing facilities to assist the elderly and the disabled "are ancillary to the plaintiff's principal purpose: to generate revenue by [developing] the property." *31FO, LLC*, 2023 WL 6385187, at *7. Therefore, Mills Pond lacks standing to pursue the discrimination claims.

*Ripeness*

Mills Pond's remaining federal claims, which consist of causes of action pursuant to 42 U.S.C. § 1983 under the Due Process and Equal Protection clauses of the U.S. Constitution (though, notably, not under the Takings Clause) require an examination of ripeness. "Because ripeness is a jurisdictional inquiry, landowners bringing zoning challenges must meet the high burden of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property before this Court may entertain their claims." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121 (2d Cir. 2014).[7] As the Circuit recently explained:

---

[7] Plaintiffs' due process claim also emanates from the defendants' failure to hold a hearing "in direct contradiction of Town Law § 274-B, which requires a public hearing be conducted within 62 days from the day a complete application is received." DE 18-38 at 16. Yet, Mills Pond has not challenged such failure in an Article 78 proceeding, which could raise a different ripeness consideration. *See Jackson v. Roslyn Bd. of*

This concern about untimely adjudication is especially pronounced in the land-use context. Land-use controversies, despite their ability to generate federal suits like this one, are "matters of local concern more aptly suited for local resolution," *Murphy*, 402 F.3d at 348, and "federal courts should not become zoning boards of appeal," *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001). Accordingly, federal courts adhere to "specific ripeness requirements applicable to land use disputes." *Murphy*, 402 F.3d at 347. *Williamson County* is the foundational case. 473 U.S. 172, 105 S. Ct. 3108. There, the Supreme Court held that a claim alleging a Fifth Amendment taking is not ripe until two prerequisites are met: first, that the "government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the final-decision requirement); and second, that the plaintiff has sought just compensation through an available state procedure (the exhaustion requirement). *Id.* at 186, 194, 105 S. Ct. 3108.

The Supreme Court has since overruled the exhaustion requirement on the ground that it "impose[d] an unjustifiable burden on takings plaintiffs [and] conflict[ed] with the rest of our takings jurisprudence." *Knick,* 139 S. Ct. at 2167. In contrast, the final-decision requirement not only remains good law but has been expanded, in this Circuit at least, to "zoning challenges based on substantive due process; First Amendment rights of assembly and free exercise; the Religious Land Use Institutionalized Persons Act of 2000; [ ] a state analogue to RLUIPA," as well as to "zoning challenges under the [Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.] based on allegations of intentional discrimination." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014) (citations omitted); *see also Pakdel v. City & Cnty. of San Francisco*, ⸻ U.S. ⸻⸻, 141 S. Ct. 2226, 210 L.Ed.2d 617 (2021) (per curiam) (applying *Williamson County*'s final-decision requirement after *Knick*).

*Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293–94 (2d Cir. 2022). In an earlier case, the Circuit applied *Williamson County* to the failure to pursue a zoning variance:

As the *Williamson County* Court held, failure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe. *See Williamson County,* 473 U.S. at 190, 105 S. Ct. 3108. This is so because through the variance process local zoning authorities function as "flexible institutions; what they take with the one hand they may give back with the other." *MacDonald*, 477 U.S. at 350, 106 S. Ct. 2561. Not pursuing a variance thus leaves undetermined the permitted use of the property in question. *See Williamson County*, 473 U.S. at 193, 200, 105 S. Ct. 3108.

---

*Educ.*, 652 F.Supp.2d 332, 345 (E.D.N.Y. 2009) (In the post-deprivation context, "[a]n Article 78 proceeding provides the opportunity to review whether a body or officer 'failed to perform a duty enjoined upon it by law' or whether a specific act was 'made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion,' and permits the state court to remedy the violation," while "avoiding the constitutional thicket" resulting from a failure to exercise a right to an Article 78 proceeding).

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 353 (2d Cir. 2005).

Here, Mills Pond acknowledges that it "has not received a final decision on its [Special Exception] Application" and relies solely on the question of futility. DE 18-38 at 23-25. However, Mills Pond fails to make the requisite showing. On this motion, the Town documents that, in addition to the Special Exception Application, Mills Pond could submit a change of zone application or apply for a variance to permit the desired use in a residential zone. DE 17-6 at 18. Mills Pond does not dispute this, nor does it claim to have made either effort. Moreover, the relatively truncated temporal aspect of this case—Mills Pond allegedly filed this action after not getting a response from the Town for two months—undermines the notion that the zoning procedures have appropriately concluded. *Compare Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury*, No. 08-CV-5081 (GRB)(LGD), 2024 WL 656516, at *6 (E.D.N.Y. Feb. 16, 2024) (noting that decades-old dispute "raise[d] serious issues of constitutional magnitude, and this matter has lingered far too long. That ends now.").

As Mills Pond has failed to meet its burden to establish futility or take other steps such as applying for a zoning change or variance, the matter is not ripe for adjudication.

*Pendent Jurisdiction*

Defendants request that the Court decline the exercise of jurisdiction over the remaining claims—sounding under the New York State Constitution and state common law—and that those claims be remanded to state court. DE 17-6 at 26. Where dismissal of federal claims is based upon a lack of subject matter jurisdiction, the Court cannot exercise supplemental jurisdiction over pendent claims. *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) ("a district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction"). Otherwise, under 28 U.S.C. § 1367(c)(3), a district court "may decline to

exercise supplemental jurisdiction over" state law claims if, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Espinosa v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-00223 (GRB)(VMS), 2021 WL 826168, at *3 (E.D.N.Y. Mar. 3, 2021). Even assuming this Court has discretion to exercise such jurisdiction, given that the Court has not dealt with the substance of this action in any significant way, the factors weigh against such exercise.

Notwithstanding defendants' request, however, the matter cannot be remanded to state court, as the matter was not removed from that forum. As such, the state claims are dismissed without prejudice to refile in an appropriate forum.

**CONCLUSION**

For the reasons set forth, defendants motion to dismiss is granted and the Court need not reach defendants additional arguments or plaintiffs' motion for preliminary relief. The Clerk is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
October 16, 2024

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

11